IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| ANTHONY BUTLER, | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **No. 5:21-CV-182 (CAR)** |
| v. | : | |
| | : | |
| JOSE ALBERTO CRUZ ADORNO, | : | |
| CTS NATIONAL CORPORATION, | : | |
| and ACE AMERICAN INSURANCE | : | |
| COMPANY, | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION TO AMEND COMPLAINT

This case stems from the collision of two tractor-trailers. Defendant Jose Alberto Cruz Adorno, driving a tractor-trailer under dispatch for Defendant CTS National Corporation, rear-ended Plaintiff Anthony Butler, driving a tractor-trailer for UPS Ground Freight, Inc.[1] Defendant ACE American Insurance Company insured Defendant CTS. Before the Court are Defendants' Motions for Summary Judgment. Having read and considered the Motion, the record in this case, the applicable law, and the parties' arguments, the Court **HEREBY GRANTS in part and DENIES in part** Defendants' Motions for Summary Judgment [Docs. 50, 52] and **DENIES as moot** Plaintiff's Motion

---

[1] In his deposition Defendant Adorno is identified using his first surname, "Cruz;" however, because the relevant motions identify him as "Adorno," that is how the Court will identify him.

1

to Amend Complaint [Doc. 57].

## BACKGROUND

On May 5, 2019, around 11:14pm, Defendant Jose Alberto Cruz Adorno[2] rear-ended Plaintiff Anthony Butler.[3] At the time of the collision, Defendant Adorno was driving a tractor and hauling an empty tanker-trailer under dispatch for Defendant CTS National Corporation,[4] and Plaintiff was driving a fully loaded tractor-trailer under dispatch for UPS Ground Freight, Inc.[5] Defendant ACE American Insurance Company is the insurer for Defendant CTS National.[6]

After stopping at a Pilot Travel Center for a few hours, Plaintiff left and entered the on-ramp for Interstate 75 North.[7] It was dark, and the roads were dry.[8] As Plaintiff merged onto I-75 at exit 146 he noticed his tractor-trailer was not picking up speed.[9] The exact speed Plaintiff was driving is in dispute. Defense expert James Hrycay opined Plaintiff never exceeded 21.7 miles per hour.[10] Plaintiff denies he drove 21.7 miles per

---

[2] In his deposition Defendant Adorno is identified using his first surname, "Cruz;" however, because the relevant motions identify him as "Adorno," that is how the Court will identify him.

[3] Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment [Doc. 52-1 at 4]; Plaintiff's Response and Brief in Opposition [Doc. 56 at 1].

[4] Defendants' Statement of Undisputed Material Facts [Doc. 52-8 ¶¶ 1, 3].

[5] Plaintiff's Complaint [Doc. 1 ¶ 5]; Doc. 52-8 ¶ 4.

[6] Plaintiff's Deposition Transcript [Doc. 51-2 at 2].

[7] *Id.* at 66, 76.

[8] Adorno's Deposition Transcript [Doc. 46-7 at 108]; Doc. 51-2 at 77.

[9] Doc. 51-2 at 83, 84.

[10] James Hrycay's Expert Report [Doc. 46-1 at 35].

hour but admits he was going less than 40 miles per hour.[11] Plaintiff testified that by the time he noticed a problem with the truck's speed, Adorno had collided into the rear of his vehicle.[12] Thus, Plaintiff contends he had no time to activate his four-way flashers.[13] Adorno testified he was driving 65 miles per hour in the right lane of I-75 when he saw Plaintiff's vehicle in his lane of travel and attempted to avoid it, but could not.[14] The collision happened near mile marker 147, approximately half a mile to one mile from where Plaintiff entered the interstate.[15] Both men were transported to the hospital after the collision.

## I.     Adorno's Employment with CTS

Defendant Adorno had two periods of employment with Defendant CTS. Adorno first worked for CTS from August 2018 until December 2018.[16] Adorno owned the tractor he drove while employed at CTS, so he could not work when it was inoperable for maintenance reasons.[17] Thus, when his motor blew in December 2018, he did not return until it had been repaired.[18] Adorno then returned to CTS at the end of April of 2019 and worked for approximately six days until the accident occurred.[19] After the accident,

---

[11] Plaintiff's Response to Defendants' Statement of Undisputed Material Facts [Doc. 60 ¶ 9]; Doc. 51-2 at 87.

[12] Doc. 51-2 168–69.

[13] *Id.*

[14] Deposition of Defendant Jose Alberto Cruz Adorno [Doc. 73 at 118].

[15] Doc. 51-2 at 82.

[16] Doc. 73 at 84; Defendant CTS's 30(b)(6) Deposition [Doc. 46-9 at 104].

[17] Doc. 46-9 at 104–05; Doc. 73 at 89.

[18] Doc. 46-9 at 104–05; Doc. 73 at 89.

[19] Doc. 46-9 at 104, 117.

Adorno's tractor was totaled, and he did not return to work for CTS.[20]

CTS employs a third-party company that performs background checks and verifies past employment for prospective hires.[21] CTS also obtains and reviews a motor vehicle report going back seven years.[22] Before hiring Adorno in August 2018, Adorno's records revealed two incidents: one ticket in 2015 for speeding in a non-commercial vehicle and one citation in 2017 for hauling a trailer with an inoperative slack adjuster.[23] CTS reviewed these violations and found they did not disqualify Adorno from the position.[24] Adorno had also been involved in one previous accident in 2008 while employed by CPC Logistics, where he rear-ended a vehicle that passed him then stopped in front of him to turn left.[25] But the 2008 accident was not on the motor vehicle record CTS reviewed, and they did not know about it until after this subject accident.[26]

CTS requires its drivers to have two years of driving experience, and it provides training which includes a written test on the Federal Motor Carrier Safety Regulations, training using the Smith System, and a road test.[27] When Adorno came back to work for CTS in April 2019, CTS re-ran his background check but did not require him to redo his

[20] *Id.* at 55, 117.

[21] Doc. 46-9 at 15, 102, 149–150.

[22] *Id.* at 102.

[23] Declaration of David Phillips [Doc. 52-2 ¶ 6]; Doc. 46-9 at 102; Doc. 73 at 141–42.

[24] Doc. 46-9 at 102; Doc. 52-2 ¶¶ 6, 7.

[25] Doc. 73 at 44–45.

[26] Doc. 46-9 at 102.

[27] *Id.* at 14–15.

initial training because it was less than one year from when he initially received it.[28]

## II.     State Court Litigation

In July 2020, Adorno filed a lawsuit against Plaintiff, Plaintiff's employer UPS, and UPS's insurer in the State Court of Gwinnett County, Georgia for his injuries arising from the accident.[29] Plaintiff's attorney answered and moved to dismiss for improper venue or, in the alternative, to transfer to the State Court of Houston County.[30] On September 9, 2020, Gwinnett County State Court entered a consent order finding venue was improper and granting the motion to transfer to Houston County.[31] The Gwinnett Order further required Adorno to "pay all accrued court costs within 20 days of mailing or delivery of the cost bill," lest the action be automatically dismissed without prejudice pursuant to Uniform State Court Rule 19.1(F) and Uniform Transfer Rule 10.[32] On September 22, 2020, Adorno dismissed his claims with prejudice in the Gwinnett County case.[33] There is no evidence in the record that Adorno ever paid the court costs required to transfer, or that the transfer to Houston County was ever effectuated. Thus, when Adorno voluntarily dismissed the case before the payment deadline, the case ended.

---

[28] *Id.* at 118.
[29] Ex. 3 to Motion for Summary Judgment, Prior Complaint [Doc. 52-5 at 1].
[30] Ex. 4 to Motion for Summary Judgment, Prior Answer [Doc. 52-6 at 1]; Ex. A to Response to Motion for Summary Judgment, Motion to Transfer [Doc. 60-1 at 1].
[31] Ex. B to Response to Motion for Summary Judgment, Consent Order [Doc. 60-2 at 1].
[32] *Id.* at 2.
[33] Ex. 5 to Motion for Summary Judgment, Dismissal [Doc. 52-7 at 1].

### III.     Current Litigation

Plaintiff filed suit in the Superior Court of Peach County against Defendants alleging negligence claims against Adorno; vicarious liability claims and direct liability claims for negligent hiring, retention, training, supervision, and failure to ensure proper maintenance against CTS; and a direct-action claim against ACE American. Defendants properly removed to this Court and now seek summary judgment on all claims.

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[34]  A genuine issue of material fact only exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[35]  Thus, summary judgment must be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.[36]  When ruling on a motion for summary judgment, the court must view the facts in the light most favorable to the party opposing the motion.[37]

The moving party "always bears the initial responsibility of informing the district

---

[34] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[35] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[36] *See id.* at 249–52.

[37] *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law.[38]  If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact.[39]  This evidence must consist of more than mere conclusory allegations or legal conclusions.[40]

## DISCUSSION

The Court first addresses Defendants' argument that Plaintiff's negligence claims against Defendant Adorno and his vicarious liability claims against Defendant CTS are barred by the compulsory counterclaim rule. Second, the Court examines Plaintiff's direct liability claims against Defendant CTS for negligent hiring, retention, training, and supervision, and failing to ensure proper maintenance. Third, the Court evaluates Plaintiff's claim against Defendant ACE American under Georgia's direct-action statute. Finally, the Court addresses whether Plaintiff was negligent per se.

## I.    Plaintiff's Claims Against Adorno and His Vicarious Liability Claims Against CTS Are Not Barred by the Compulsory Counterclaim Rule

Defendants argue they are entitled to summary judgment on Plaintiff's negligence

---

[38] *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted).

[39] *See* Fed. R. Civ. P. 56(e); *see also Celotex Corp.*, 477 U.S. at 324–26.

[40] *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).

claims against Adorno and Plaintiff's vicarious liability claims against CTS because they are compulsory counterclaims he failed to assert in his previous state court lawsuit. The Court disagrees.

"[A] party may not raise issues arising out of the same transaction which should have been pled as a compulsory counterclaim in another separate suit. If the first suit is completed, then res judicata serves to bar proceeding with the second action."[41] Georgia's statute on compulsory counterclaims states:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if . . . the claim is not within the jurisdiction of the court.[42]

"When [a court is] asked to give *res judicata* effect to a state court judgment, [the court] must apply the *res judicata* principles of the law of the state whose decision is set up as a bar to further litigation."[43] Because Defendants contend a Georgia case bars Plaintiff's claims against Defendant Adorno and the vicarious liability claims against Defendant CTS, Georgia *res judicata* principles apply. Georgia's *res judicata* statute states:

> A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein

---

[41] *Allstate Ins. Co. v. Welch*, 259 Ga. App. 71, 73 (2003) (quoting *First Fed. Sav. & Loan Ass'n of Detroit v. I.T.S.R.E., Ltd.*, 159 Ga. App. 861, 863 (1981).

[42] O.C.G.A. § 9-11-13(a)(3).

[43] *Kizzire v. Baptist Health Sys., Inc.*, 441 F.3d 1306, 1308 (11th Cir. 2006)

the judgment was rendered until the judgment is reversed or set aside.[44]
The three requirements for *res judicata* to apply are: (1) identical causes of action, (2) identical parties or their privies, and (3) previous adjudication on the merits by a court of competent jurisdiction.[45]

Plaintiff's counterclaims were not compulsory because venue was improper in Gwinnett County. Under Georgia law, when venue as to defendants is improper, "the court is without personal jurisdiction to enter a binding judgment on the merits against the nonresident defendants."[46] "[A] counterclaim is not compulsory when there is no jurisdiction."[47] The judge in the Gwinnett County case granted Plaintiff Butler's motion to transfer venue and ruled "venue for this case cannot lie in Gwinnett County . . . ."[48] Because the state court lacked jurisdiction over Plaintiff Butler, he was not required to assert his counterclaims. Thus, the Gwinnet County case is not a previous adjudication on the merits by a court of competent jurisdiction, and *res judicata* does not bar Plaintiff's claims against Adorno or CTS.[49]

---

[44] O.C.G.A. § 9-12-40.

[45] *Coen v. CDC Software Corp.*, 304 Ga. 105, 109 (2018).

[46] *Exum v. Melton*, 244 Ga. App. 775, 776 (2000).

[47] *EarthLink, Inc. v. Eaves*, 293 Ga. App. 75, 78 (2008) (citing *Lester v. Goodyear Tire & Rubber Co.*, 156 Ga. App. 171, 171 (1980)).

[48] Consent Order [Doc. 60-2 at 2].

[49] Moreover, even if Plaintiff's claims against Adorno were barred by *res judicata*, they would not be barred against CTS for their liability under the doctrine of *respondeat superior*. Although a voluntary dismissal with prejudice acts as an adjudication on the merits, "the effect of a voluntary dismissal does not extend to any party not named therein." *Hedquist v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 272 Ga. 209, 212 (2000). Thus, CTS would not be entitled to dismissal of Plaintiff's claims because CTS was not a party to the earlier lawsuit.

II.     **Plaintiff's Direct Liability Claims Against CTS Fail to Raise Genuine Issues of Material Fact**

A. *Negligent Hiring and Retention*

Under Georgia law, "[t]he employer is bound to exercise ordinary care in the selection of employees and not to retain them after knowledge of incompetency."[50] Thus, "an employer may be liable for hiring or retaining an employee the employer knows or in the course of ordinary care should have known was not suited for the particular employment."[51] "[L]iability for negligent hiring or retention requires evidence that the employer knew or should have known of the employee's propensity to engage in the type of conduct that caused the plaintiff's injury."[52] Accordingly, Georgia courts have "granted summary judgment to employers when there is no evidence that the employer knew of violations on the employee's driving record or ignored its own reasonable policy of investigating such records, and denied summary judgment when there is evidence that the employer knew of such violations on the employee's record."[53] "Whether or not an employer's investigative efforts were sufficient to fulfill its duty of ordinary care is dependent upon the unique facts of each case."[54]

Plaintiff's negligent hiring and retention claims fail to raise a genuine issue of

---

[50] O.C.G.A. § 34-7-20.

[51] *Munroe v. Universal Health Servs., Inc.*, 277 Ga. 861, 862 (2004).

[52] *Middlebrooks v. Hillcrest Foods, Inc.*, 256 F.3d 1241, 1247 (11th Cir. 2001) (citing *Alpharetta First United Methodist Church v. Stewart*, 221 Ga. App. 748, 753 (1996)).

[53] *W. Indus., Inc. v. Poole*, 280 Ga. App. 378, 382 (2006).

[54] *Munroe*, 277 Ga. at 864 n.4.

material fact. There is no evidence that CTS knew Adorno had been in another rear-end collision at the time he was hired.[55] The 2008 accident was not included on the seven-year motor vehicle report, nor did the third-party company that performed background checks and verified past employment discover it.[56] There is no evidence CTS failed to follow the minimum requirements set by the Federal Motor Carrier Safety Regulations ("FMCSRs"), and in fact, there is evidence CTS went beyond them by obtaining Adorno's motor vehicle record for the preceding seven years rather than the three years required by the FMCSRs.[57] The FMCSRs only require an employment application to request information on employers and accidents for the previous three years, which CTS did.[58] Thus, even though CTS investigated farther back than was required, it did not uncover the 2008 accident because it occurred ten years before he was initially hired by CTS.

Plaintiff argues that CTS would have discovered the prior accident if it had called Adorno's prior employer, CPC Logistics, but this is speculative. Adorno was last employed by CPC in 2012, six years before he applied to CTS, and there is no guarantee that calling CPC would have produced this information. Moreover, without knowing more information about the 2008 accident, it is unclear whether it would have prohibited

---

[55] Plaintiff's Response and Brief in Opposition to Defendants' Motion for Summary Judgment [Doc. 56 at 16–17]; Doc. 52-2 ¶¶ 5, 6; Doc. 46-9 at 102.

[56] Doc. 46-9 at 15, 102, 149–150.

[57] 49 C.F.R. § 391.23(a)(1).

[58] 49 C.F.R. § 391.21(b)(7), (10); Doc. 52-2 ¶ 6.

Adorno from being hired.[59] In fact, Plaintiff's trucking standards expert Adam Grill had no criticisms of CTS's hiring of Adorno.[60]

Plaintiff criticizes CTS for not investigating Adorno's prior employment or accident history when he was re-hired, but even if CTS ran the background checks on Adorno anew there is no evidence the outcome would have changed. The 2008 accident was still too remote to be discovered by CTS's hiring procedures. Thus, there is no evidence that CTS knew or should have known about the 2008 accident prior to hiring him or after retaining him.[61] Nor is there any evidence that CTS's hiring procedures "were faulty or not reasonable under the circumstances."[62] Thus, the Court **GRANTS** Defendants' Motion for Summary Judgment as to the negligent hiring and retention claims.

B.  *Negligent Training and Supervision*

"To establish a negligent training claim, a plaintiff must demonstrate that inadequate training caused a reasonably foreseeable injury."[63] To defeat summary judgment on negligent supervision, a plaintiff must show "there is sufficient evidence to

---

[59] Doc. 46-9 at 54.

[60] Deposition of Adam Grill [Doc. 51-9 at 29].

[61] *See Patterson v. Southeastern Newspapers, Inc.*, 243 Ga. App. 241, 245 (2000) (granting summary judgment when there was no evidence employer knew or should have known of employee's bad driving record and there was no evidence employer's hiring procedures were faulty); *Cherry v. Kelly Servs., Inc.*, 171 Ga. App. 235, 235 (1984) (denying summary judgment to employer when employer knew of one traffic violation on employee's record but did not investigate further).

[62] *Patterson*, 243 Ga. App. at 245.

[63] *ABM Aviation v. Prince*, 366 Ga. App. 592, 598 (2023) (quoting *Advanced Disposal Servs. Atlanta, LLC v. Marczak*, 359 Ga. App. 316, 319 (2021)).

establish the employer reasonably knew or should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff."[64]

Because Plaintiff fails to raise genuine issues of material fact on his negligent training and supervision claims, the Court need not decide whether he failed to assert them in his Complaint.[65] Before beginning his employment, CTS required Adorno to take a written test on the FMCSRs; complete training including on-road Smith System defensive driving training in which his performance was "exceptional;" and take a road test in which his performance was "outstanding."[66] Plaintiff's expert Adam Grill identifies areas where CTS inadequately trained Adorno, including night driving and speed and space management. But as explained in the Court's Order on the parties' *Daubert* motions, Adam Grill's testimony that CTS inadequately trained Adorno is excluded because of his lack of reliable data and methodology. Further, there are no federal regulations or other authority that mandate such training, however helpful it may be. With Grill's testimony excluded, Plaintiff is left without any evidence supporting his negligent training claim. Nor is there sufficient evidence, as discussed above, to

---

[64] *Leo v. Waffle House, Inc.*, 298 Ga. App. 838, 841 (2009) (quoting *Alexander v. A. Atlanta Autosave, Inc.*, 272 Ga. App. 73, 77 (2005)).

[65] Defendants argue Plaintiff failed to assert a negligent training or supervision claim in his Complaint. Plaintiff counters that he is not required to plead every legal theory of recovery under the notice pleading standard of Federal Rule of Civil Procedure 8 and moves to amend his Complaint [Doc. 57].

[66] Doc. 52-2 ¶ 8; Doc. 46-9 at 15, 121, 139

demonstrate CTS knew or should have known about Adorno's 2008 accident to support Plaintiff's negligent supervision claim. Thus, the Court **GRANTS** Defendants' Motion for Summary Judgment as to the negligent training and supervision claims.

C. *Failing to Ensure Proper Maintenance*

Nothing in the record suggests Defendant CTS was negligent in failing to ensure the vehicle was properly maintained and inspected.[67] There is no evidence the tractor-trailer driven by Adorno was defective in any way, nor any evidence that improper maintenance of the tractor-trailer caused Plaintiff's injuries. Thus, the Court **GRANTS** Defendants' Motion for Summary Judgment as to the negligent maintenance and inspection claim.

**III.   Plaintiff's Direct-Action Claim Against ACE American Does Not Fail as a Matter of Law**

Georgia's direct-action statute allows a plaintiff to join both the motor carrier and insurance carrier in the same action.[68] To maintain a cause of action against an insurer, the plaintiff must have an "actionable injury."[69] "And 'actionable injury' means an injury to a person who could sue the motor carrier and obtain a judgment for his injuries."[70]

Defendant ACE American is not entitled to summary judgment on Plaintiff's direct-action claim because actionable claims against the insured party remain. Thus, the

---

[67] Doc. 46-9 at 121–22.

[68] O.C.G.A. § 40-1-112(c).

[69] *Coleman v. B-H Transfer Co.*, 290 Ga. App. 503, 508 (2008).

[70] *Id.*

Court **DENIES** Defendants' Motion for Summary Judgment as to Plaintiff's direct-action claim.

### IV.    Genuine Issues of Material Fact Remain as to Plaintiff's Negligence Per Se

Defendants argue Plaintiff was negligent per se because he violated two provisions of the Georgia Uniform Rules of the Road: O.C.G.A. § 40-6-184(a) and O.C.G.A. § 40-8-7(a). O.C.G.A § 40-6-184(a) states: "No person shall drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic, except when reduced speed is necessary for safe operation." O.C.G.A. § 40-8-7(a) states: "No person shall drive or move on any highway any motor vehicle . . . unless . . . the vehicle is in such safe mechanical condition as not to endanger the driver or other occupant or any person upon the highway."

"A violation of the Uniform Rules of the Road prima facie establishes negligence per se in the absence of a valid defense. The burden then shifts to the defendant to show that the violation was unintentional and in the exercise of ordinary care."[71] It is clear from the record that Plaintiff was driving below the minimum speed limit, and Plaintiff's vehicle was not in proper working order based on its inability to pick up speed. Defendants argue this is sufficient to establish Plaintiff was negligent per se.[72]

---

[71] *In/Ex Sys., Inc. v. Masud*, 352 Ga. App. 722, 724 (2019) (quoting *Harden v. Burdette*, 204 Ga. App. 733, 735 (1992)).

[72] Plaintiff argues, among other things, that state law is impliedly pre-empted by FMCSR § 396.7(b). Because the Court is denying partial summary judgment on negligence per se, it does not address this argument on the merits. The Court can address any issues with Plaintiff offering evidence on this at trial through a motion in limine.

But a genuine dispute exists as to whether Plaintiff has a valid defense for operating his vehicle on the interstate at those low speeds. Both Plaintiff's and Defendants' trucking experts offer opinions about whether Plaintiff should have continued driving slowly until the nearest exit or pulled over and parked on the side of the highway. Thus, a reasonable jury could find Plaintiff had a valid defense and was justified in continuing. In *Robinson v. Metropolitan Atlanta Rapid Transit Authority*,[73] the Georgia Court of Appeals affirmed the trial court's refusal to give a negligence per se instruction for a violation of O.C.G.A. § 40-8-7(a) when the vehicle had been serviced recently, and the "driver had no reason to suspect that anything was wrong with the vehicle before it broke down."[74] Here, there is a genuine issue of material fact as to whether Plaintiff should have known something was wrong with the vehicle before merging onto the highway based on the conflicting testimony of Plaintiff and Defendants' expert James Hrycay. Thus, the Court **DENIES** Defendants' partial summary judgment as to Plaintiff's negligence per se.

## CONCLUSION

For the reasons set forth above, the Court **HEREBY GRANTS IN PART** and **DENIES IN PART** the Defendants' Motions for Summary Judgment [Docs. 50, 52]. Specifically, the Court **DENIES** summary judgment for Defendants on Plaintiff's claims

---

[73] 197 Ga. App. 628, 629 (1990).

[74] *Robinson v. Metro. Atlanta Rapid Transit Auth.*, 197 Ga. App. 628, 629 (1990).

against Adorno and vicarious liability claims against CTS; Plaintiff's direct-action claim against ACE American; and Plaintiff's negligence per se; and **GRANTS** summary judgment for Defendants on Plaintiff's direct liability claims against CTS; and **DENIES as moot** Plaintiff's Motion to Amend Complaint [Doc. 57].

      **SO ORDERED,** this 27th day of March, 2024.

s/ C. Ashley Royal
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT